IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | | |
|---|---|---|
| Summer D. Lashley, Ph.D., | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **VERIFIED COMPLAINT** |
| | ) | **(Jury Trial Demanded)** |
| Spartanburg Methodist College; | ) | |
| W. Scott Cochran; Mark W. Gibbs, Ph.D.; | ) | |
| Teresa D. Ferguson; Jonathan J. | ) | |
| Keisler, Ph.D.; Angelia A. Turner; and | ) | |
| Clevon A. Boyd, in his individual capacity, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff, Summer D. Lashley, Ph.D., by way of her Verified Complaint in the above-captioned action, would allege and show unto this Honorable Court the following:

## I.  Parties, Jurisdiction, and Venue

1.      Plaintiff is a citizen and resident of Durham County, North Carolina.

2.      Defendant Spartanburg Methodist College (hereinafter "Defendant SMC") is a non-profit corporation organized and existing pursuant to the laws of the State of South Carolina, with its principal place of business in Spartanburg County, South Carolina.  Defendant owns property and conducts business within the Spartanburg Division of this Court.

3.      Upon information and belief, Defendant W. Scott Cochran (hereinafter "Defendant Cochran") is a citizen and resident of Spartanburg County, South Carolina.  Defendant Cochran is the President of Defendant SMC.

4.      Upon information and belief, Defendant Mark W. Gibbs, Ph.D. (hereinafter

"Defendant Gibbs") is a citizen and resident of Buncombe County, North Carolina. Defendant Gibbs is the Dean of Instruction at Defendant SMC and is a Professor of Philosophy and Religion at Defendant SMC.

5.      Upon information and belief, Defendant Teresa D. Ferguson (hereinafter "Defendant Ferguson") is a citizen and resident of Spartanburg County, South Carolina. Defendant Ferguson is the Dean of Students at Defendant SMC.

6.      Upon information and belief, Defendant Jonathan J. Keisler, Ph.D. (hereinafter "Defendant Keisler") is a citizen and resident of Spartanburg County, South Carolina. Defendant Keisler is a Professor of Economics at Defendant SMC.

7.      Upon information and belief, Defendant Angelia A. Turner (hereinafter "Defendant Turner") is a citizen and resident of Greenville County, South Carolina. Defendant Turner is the Director of the Online Criminal Justice Program at Defendant SMC.

8.      Upon information and belief, Defendant Clevon A. Boyd (hereinafter "Defendant Boyd") is a citizen and resident of Spartanburg County, South Carolina. Defendant Boyd is the former Chief of Defendant SMC's Campus Police Department and was a sworn Class I Police Officer. Defendant Boyd is being sued in his individual capacity for actions taken under color of state law.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343, because this action is based, in part, on the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.; Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq.; and the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq.

10.     Plaintiff has exhausted all administrative remedies required in employment discrimination actions under the ADA and Title VII. Plaintiff filed a timely charge of employment discrimination against Defendant SMC with the Equal Employment Opportunity Commission ("EEOC"), on or about April 10, 2018, within three hundred (300) days of the commission of the unlawful employment practices alleged herein. Plaintiff received a "Notice of Right to Sue" letter from the EEOC on or about November 1, 2018, upon request by Plaintiff's counsel. This suit is being filed within ninety (90) days of the receipt of that letter.

11.     This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over Plaintiff's causes of action under the statutory and common law of the State of South Carolina, because those causes of action arise out of the same transactions or occurrences, and thus form part of the same case or controversy, as the underlying federal claims.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because at least one Defendant is a citizen or resident of Spartanburg County, South Carolina, and the unlawful employment practices giving rise to Plaintiff's claims were committed, at least in part, within this judicial district and division.

## II.  Facts

13.     Defendant SMC is a private, accredited, two-year institution of higher learning in Spartanburg County, South Carolina.

14.     Plaintiff began working for Defendant SMC as the Director of the Criminal Justice Program and Professor of Criminal Justice on or about July 1, 2017, pursuant to a Letter of Employment (hereinafter "Employment Contract") for the 2017-2018 Academic Year, which was

3

presented to Plaintiff in or about April 2017. A true and accurate copy of the Employment Contract is attached hereto as Exhibit A.

15.    Plaintiff's Employment Contract expressly incorporated by reference Defendant SMC's Faculty Handbook and the SMC Policies and Procedures Manual. Excerpts of the SMC Faculty Handbook are attached hereto as Exhibit B. Excerpts of the SMC Policies and Procedures Manual are attached hereto as Exhibit C.

16.    Shortly after the start of the Spring Semester in early January 2018, Plaintiff entered a Supplemental Employment Contract with Defendant SMC to teach an additional course in the Spring Semester of the 2017-2018 Academic Year.

17.    At all times relevant hereto, Plaintiff was a good and faithful employee of Defendant SMC and performed her job at an exceptional level. Plaintiff received a letter from her immediate supervisor at the start of the Spring Semester thanking her for her excellent work and informing Plaintiff that her student evaluations from the Fall 2017 semester were outstanding. Plaintiff was also heavily involved in extracurricular student activities, campus safety and governance, and charitable causes through the school and in the community in general.

18.    Late in the Fall 2017 Semester and again early during the Spring 2018 Semester, Plaintiff's immediate supervisor, the Chair of the Social Sciences Division, informed her that she was doing an excellent job and that her Employment Contract with Defendant SMC would be renewed for the 2018-2019 Academic Year. Plaintiff was actually placed on the preliminary schedule for the Fall 2018 semester and was informed that she would be teaching five courses for Defendant SMC starting August 22, 2018. Defendant Gibbs sent an email to Plaintiff's supervisor that the Criminal Justice Department would no longer be needing one of the adjunct professors

4

because Plaintiff would be following in her predecessor's footsteps and teaching a 5/5 class load in the 2018-2019 Academic Year.

19.    On or about January 26, 2018, Plaintiff reported to her direct supervisor that there was mold in her office building, which Plaintiff believed had been aggravating her asthma and causing other health problems since the beginning of the Fall semester.  Plaintiff emailed a photograph or photographs to her supervisor of mold on the ceiling tiles in the building where her office was located.

20.    Also towards the end of January 2018, Plaintiff began to have serious gastrointestinal problems, which caused her to seek medical attention at the hospital.

21.    On or about Tuesday, January 30, 2018, Defendant Gibbs came into Plaintiff's office and abruptly stated, "So, tell me about your health issues."  Plaintiff reluctantly responded that she had been diagnosed with Lupus since 2004, that she had asthma all of her life, that she suffers from post-traumatic stress disorder, and that she currently had severe GI issues, which required her to report to work in adult diapers.  Plaintiff was fearful for her job if she did not respond to Defendant Gibbs's inquiry about her health-related issues.

22.    On or about February 9, 2018, during a faculty meeting, Plaintiff saw Defendant Gibbs, who asked her how she was feeling.  She responded that she had an appointment scheduled with a specialist, but that they think she might have Crohn's Disease.  Defendant Gibbs responded, "Wow.  That sounds like a life-long issue."  Plaintiff also told Defendant Gibbs that she was still wearing adult diapers to work.

23.    On or about February 13, 2018, Defendant Gibbs sent Plaintiff an email requesting her to report to his office at 1:30 p.m.  When Plaintiff arrived for the meeting with Defendant Gibbs,

5

Defendant SMC's Director of Human Resources was also in his office for the meeting. Defendant Gibbs told Plaintiff that he and Executive Vice President for Academic Affairs, Ann Bowles, had decided not to renew her contract for the next year. He stated that the Employee Handbook requires them to notify faculty by February 15 about their employment for the next year. Defendant Gibbs attempted to explain that Plaintiff herself had previously stated that she did not think SMC was a "good fit" for her, which was a blatant distortion of Plaintiff's comments about SMC. Defendant Gibbs also stated that they expected her to finish out the remainder of the Spring 2018 Semester, which ended on or about May 8, 2018. He then handed Plaintiff a letter dated February 13, 2018, from Dr. Bowles formally confirming the non-renewal of Plaintiff's contract.

24.     On Friday, February 16, 2018, Defendants Cochran and Ferguson abruptly came into Plaintiff's office after she had finished teaching her second class of the day. Defendant Cochran told the three students in Plaintiff's office that they needed to leave. Defendant Cochran then told Plaintiff that she needed to get her things together and leave immediately. Defendant Cochran told Plaintiff that they would pay her salary and benefits through the end of her contract, but that she was immediately relieved of any further responsibilities at the school. When Plaintiff asked why they were doing this, Defendant Cochran stated in a loud, hostile voice while hovering over her desk, "Because of conversations!" as he waived his left hand from left to right in an intimidating manner. Defendant Cochran refused to elaborate any further and stormed out of her office. Defendant Ferguson remained with Plaintiff while she gathered her belongings and then noticeably escorted Plaintiff to her car.

25.     On February 26, 2018, the undersigned counsel for Plaintiff wrote to Defendant Cochran, reserving Plaintiff's rights under her Employment Contract and her grievance rights under

6

Defendant SMC's Faculty Manual and Employee Handbook. The February 26 letter also informed Defendant Cochran that the undersigned counsel was investigating potential legal claims for Plaintiff, including under Title IX and the ADA.

26.     On March 5, 2018, Plaintiff was notified by her insurance company that her health insurance through Defendant SMC had been canceled effective February 28, 2018.

27.     On March 6, 2018, the undersigned counsel again wrote to Defendant Cochran on Plaintiff's behalf formally requesting a grievance about the non-renewal of her contract and her termination. The undersigned also made a formal complaint of discrimination and retaliation under Title IX and requested that Defendant SMC conduct an official Title IX investigation into Plaintiff's complaints.

28.     On March 8, 2018, Defendant SMC's outside employment counsel wrote the undersigned counsel for Plaintiff stating that Defendant SMC had rescinded its offer to pay the balance of Plaintiff's Employment Contract because of Plaintiff's threat of litigation.

29.     On May 10, 2018, the undersigned counsel for Plaintiff sent a letter to Defendant SMC's Board Chair filing a formal complaint on Plaintiff's behalf pursuant to Defendant SMC's Whistleblower Protection Policy for retaliatory discharge.

30.     On May 31, 2018, only after Plaintiff won her appeal for unemployment benefits and filed a charge against Defendant SMC with the EEOC for discrimination and retaliation, Defendant SMC's counsel sent Plaintiff's counsel a letter enclosing checks purporting to pay Plaintiff for the balance of her pay on the 2017-2018 Employment Contract, plus reimbursement of four months of COBRA benefits.

31.     On June 5, 2018, Plaintiff's counsel wrote to Defendant SMC's counsel indicating

7

that Plaintiff's latest paycheck was approximately $1,500.00 short because of the deferral of pay from the first semester to allow Plaintiff to continue receiving a regular pay check over the summer.

32.     To date, Defendant SMC has not paid Plaintiff the short-fall from her 2017-2018 contract, nor has Defendant SMC investigated or otherwise processed Plaintiff's whistleblower complaint in accordance with the SMC Employee Handbook.

### FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**
**(Against Defendant SMC)**

33.     Plaintiff repeats and realleges Paragraphs 1-32 as if restated herein verbatim.

34.     Defendant SMC offered Plaintiff an Employment Contract to teach for the 2017-2018 Academic Year in exchange for salary and benefits, as confirmed in the Employment Letter attached hereto as Exhibit A.

35.     Plaintiff accepted Defendant SMC's offer of an Employment Contract.

36.     The Employment Contract between Plaintiff and Defendant SMC was supported by good and valuable consideration.

37.     Plaintiff's Employment Contract expressly incorporated by reference Defendant SMC's Faculty Manual and Employee Handbook, both of which expressly governed the terms of Plaintiff's employment with Defendant SMC.  The purported disclaimer in the SMC Employee Handbook applies only to non-faculty employees.

38.     The SMC Faculty Manual and the SMC Employee Handbook contain various promises, set forth in mandatory language.

39.     Plaintiff fully performed all of her obligations as required of her pursuant to the Employment Contract and complied with all terms and conditions of her employment, including

8

under the SMC Faculty Manual and the SMC Employee Handbook.

40.     Defendant SMC breached the terms of the employment contract, including the implied covenant of good faith and fair dealing, in the following particulars:

A.     By terminating Plaintiff's employment, without sufficient cause;

B.     By failing or refusing to pay all of Plaintiff's compensation under the contract;

C.     By failing or refusing to provide employee benefits to Plaintiff throughout the term of her contract;

D.     By failing or refusing to conduct any investigation into Plaintiff's claims of whistleblower retaliation; and

E.     By failing or refusing to take appropriate action to remedy Plaintiff's claims of whistleblower retaliation.

41.     Defendant SMC's breaches of contract as set forth herein have caused Plaintiff to suffer substantial, consequential damages, including lost earnings, lost future earnings capacity, damage to professional reputation, and lost job opportunities.

42.     Plaintiff is entitled to recover in this action actual damages from Defendant SMC to compensate her for her reasonably foreseeable, consequential damages.

43.     In addition, the amount of consequential damages suffered by Plaintiff is a sum certain or is an amount that is capable of being reduced to a certainty.  Accordingly, Plaintiff is entitled to recover prejudgment interest on the amounts owed to her by Defendant SMC, from the time such amounts were payable until the date of the judgment in this matter.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Accompanied by a Fraudulent Act)
### (Against Defendant SMC)

44.    Plaintiff repeats and realleges Paragraphs 1-43 as if restated herein verbatim.

45.    Defendant SMC breached its Employment Contract with Plaintiff as alleged in detail above.

46.    Defendant SMC had a malicious and fraudulent intent relating to its breach of the Employment Contract alleged above.

47.    Defendant SMC, by and through its officers, employees, or agents, acting within the course and scope of their office, employment, or agency, committed one or more fraudulent acts accompanying the breach of the contract with Plaintiff, including the following: by fabricating a false reason for Plaintiff's immediate termination; by falsely accusing Plaintiff of making threats against the students, faculty, and/or staff of Defendant SMC; and by inducing employees of Defendant SMC to execute false and fraudulent affidavits against Plaintiff.

48.    The actions of Defendant SMC and its officers, employees, or agents as set forth herein are characterized by dishonesty in fact and/or unfair dealing.

49.    The breaches of contract accompanied by a fraudulent act as set forth herein have directly and proximately caused Plaintiff to suffer substantial, consequential damages.

50.    The actions of Defendant SMC as set forth herein have also directly and proximately caused Plaintiff to suffer significant emotional distress and anxiety.

51.    Plaintiff is entitled to recover in this action actual damages from Defendant SMC sufficient to compensate her for her actual damages.

52.    In addition, Plaintiff is entitled to an award of punitive damages against Defendant

SMC, in an amount to be determined by the jury at trial, sufficient to deter this Defendant and others from engaging in such wrongful and fraudulent conduct in the future.

### FOR A THIRD CAUSE OF ACTION
**(Violation of the South Carolina Payment of Wages Act)**
**(Against Defendants SMC and Cochran)**

53.     Plaintiff repeats and realleges Paragraphs 1-52 as if restated herein verbatim.

54.     Defendant SMC is an "employer" as defined by the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10(1).  Defendant Cochran is also considered an "employer" as defined by the Act because he is the principal officer of Defendant SMC and had the ultimate authority and responsibility for ensuring that Defendant SMC complied with the Act.

55.     Defendant SMC employed Plaintiff within the State of South Carolina.

56.     Defendant SMC owes Plaintiff "wages" as defined in Section 41-10-10(2) of the Act, to compensate her for labor rendered to Defendant SMC as required by her position and the Employment Contract.

57.     Despite Plaintiff's repeated demands, Defendant SMC has failed to pay Plaintiff all wages due to her, as required by Sections 41-10-40 and -50 of the Act.

58.     Pursuant to Section 41-10-50 of the Act, all of Plaintiff's unpaid wages were due and payable to her within 48 hours of her separation of employment, or her next regularly scheduled pay date (not to exceed 30 days).  Defendant SMC failed to pay Plaintiff all wages due to her within the relevant deadline following her termination.

59.     Defendant SMC's failure to pay Plaintiff all wages due is willful, without justification, and in violation of the duty of good faith and fair dealing.

60.     Pursuant to Section 41-10-80(C) of the Act, Plaintiff is  entitled to recover in this

action an amount equal to three times the full amount of her unpaid wages, plus costs and reasonable attorney's fees.

61.    Defendant Cochran is individually liable for the unpaid wages owed to Plaintiff because he knowingly permitted Defendant SMC to violate the South Carolina Payment of Wages Act.  In addition, he specifically made the decision not to pay Plaintiff the wages he had previously promised she would be paid, after Plaintiff's attorney threatened legal action relating to her employment and termination.  Accordingly, Defendant Cochran is liable to Plaintiff to the same extent as Defendant SMC  for the amount of the unpaid wages, treble damages, and attorney's fees and costs.

## FOR A FOURTH CAUSE OF ACTION
### (Defamation–Libel and Slander Per Se)
### (Against All Defendants)

62.    Plaintiff repeats and realleges Paragraphs 1-61 as if restated herein verbatim.

63.    Immediately after Plaintiff's termination of employment on February 16, 2018, a text message or email message was circulated to all Resident Assistants and Residence Hall Directors, which message contained Plaintiff's personal photograph from her LinkedIn profile, with the message, "If you see this lady, please let me know !!"

64.    Upon information and belief, the above-described message was sent out by Defendant Ferguson or her subordinate employee, Trina Gilliam, Director of Residence Life and Student Conduct, at the directive of Defendants Cochran, Ferguson, Boyd, or other employees of Defendant SMC acting within the course and scope of their employment.

65.    The defamatory message about Plaintiff was widely circulated by Resident Assistants to other students, faculty, and staff within SMC, who reasonably interpreted the email to imply that

12

Plaintiff was a criminal or posed some type of serious threat to the school.

66.     Other Defendants made various untrue and derogatory statements about Plaintiff that injured her reputation generally and within the academic community.  Such defamatory statements include, but are not limited to, the following:

> A.     Defendant Turner falsely reported that on or about February 14, 2018, she overheard Plaintiff tell students that she (Lashley) was going to "blow the place up."
>
> B.     Defendant Keisler falsely reported that shortly before her termination, Plaintiff stated to him that "people who cross me wind up dead."
>
> C.     On February 16, 2018, the day that Plaintiff was terminated from Defendant SMC, Defendant Boyd posted on his public Facebook page, "I do not want to see that little domestic terrorist's face on my timeline, Thanks."  Upon information and belief, Defendant Boyd's post was intended to refer to Plaintiff, although he did not specifically mention her by name.  People who viewed Defendant Boyd's post reasonably interpreted his post to relate to Plaintiff.
>
> D.     Several employees of Defendant SMC, including Defendant Gibbs, "liked" Defendant Boyd's Facebook post about the "little domestic terrorist," further spreading the defamatory post.
>
> E.     Defendant Ferguson publicly and conspicuously escorted Plaintiff off of the SMC campus in front of students, faculty, and staff.
>
> F.     Defendant Ferguson accused Plaintiff of having a sexual relationship with a

co-worker at Defendant SMC and said to a campus safety officer that "higher ups" at Defendant SMC believed that he and Plaintiff were having an affair.

G.      Various employees of Defendant SMC spread false rumors that Plaintiff was having a sexual relationship with one of her students.

H.      One of Plaintiff's colleagues, Adjunct Professor Dale Hyder, repeatedly told his students during class that Ph.D.s in criminal justice (nodding or pointing in the direction of Plaintiff's office) did not know what they were talking about and had no real-world experience.  Although Mr. Hyder did not specifically mention Plaintiff by name, the students in the class knew immediately that he was referring to Plaintiff, who was the only member of the Criminal Justice Program at the time who had earned a Ph.D.

I.      Following Plaintiff's termination, Defendant Gibbs and Dr. Bowles told Plaintiff's classes that Plaintiff had simply left the college with no explanation, implying to the students that Plaintiff had abandoned her students in the middle of the semester.

J.      When Defendant Turner took over teaching several of Plaintiff's classes in the Spring of 2018 following Plaintiff's termination, Defendant Turner told students that she was part of committee to hire someone to replace Plaintiff at Defendant SMC because of the predicament in which Plaintiff left the school.

67.      Defendants published the above defamatory statements to third parties, including students, Plaintiff's former co-workers at Defendant SMC, and the public at large.

14

68.     Defendants made the above-described defamatory statements with actual malice and with the intent to injure Plaintiff's reputation.  Defendants made these statements knowing they were false or with reckless disregard as to their truth or falsity.

69.     The defamatory statements at issue made about Plaintiff were and are untrue.

70.     The defamatory statements at issue made about Plaintiff constitute libel or slander per se under the common law of South Carolina, because they accuse Plaintiff of committing serious crimes or of unfitness in her business or profession, and the defamatory meanings of the statements are obvious on their face.

71.     The oral and written defamatory statements described herein have directly and proximately caused actual damages to Plaintiff, including lost earning capacity, embarrassment, humiliation, emotional distress, injury to reputation, and loss of enjoyment of life.  In addition, because the statements at issue are actionable per se, general damages to Plaintiff may be presumed under law.

72.     Plaintiff is also entitled to an award of punitive damages against Defendants, in an amount to be determined by the jury, sufficient to deter these Defendants and others from engaging in such wrongful and malicious behavior in the future.

### FOR A FIFTH CAUSE OF ACTION
### (Wrongful Termination in Violation of Public Policy)
### (Against Defendant SMC)

73.     Plaintiff repeats and realleges Paragraphs 1-72 as if restated herein verbatim.

74.     Plaintiff was terminated from her employment with Defendant SMC on or about February 16, 2018, without cause and without notice.

75.     Prior to her termination, Plaintiff had made the administration of Defendant SMC

aware of several criminal incidents occurring on campus or affecting students of Defendant SMC, including the following: (1) a member of Defendant SMC's baseball team made a video recording of himself and a female engaging in sexual intercourse, and later posted the video to social media or sent the video to members of the baseball team without the female's knowledge or consent; (2) another member of Defendant SMC's baseball team made a video recording of one of his teammates in the shower, without the other person's knowledge or consent, and later posted the video to social media without the subject's knowledge or consent; (3) a member of the men's basketball team intentionally dumped a large container of mustard on a female student in the middle of the cafeteria, while other athletes laughed and recorded the incident on their phones, causing substantial humiliation and embarrassment to the female student and ruining her clothing; (4) several members of the men's basketball team allegedly engaged in criminal activity at a local Wal-Mart using some type of device to create fraudulent credit card transactions to purchase valuable gift-cards, while a female student was working the check-out line, causing the female student to lose her job at Wal-Mart and to be arrested for serious criminal charges; (5) Plaintiff reported to Defendant Ferguson an alleged rape of a female student by a member of the SMC wrestling team, which was relayed to Plaintiff by another student, which incident was never investigated by Defendant SMC; and (6) Plaintiff reported to campus safety a picture of members of the SMC wrestling team drinking and driving, which picture was provided to her by a student.

76. Various students at Defendant SMC made Plaintiff aware of the above activities because of Plaintiff's position as Director of the Criminal Justice Program and Professor of Criminal Justice at SMC. Plaintiff encouraged and assisted the student victims of the above actions to seek appropriate legal remedies both within and outside of the College.

77.     Plaintiff was told on several occasions that she "needed to keep her mouth shut."

78.     In addition, in January 2018, shortly before her termination, Plaintiff reported the presence of black mold in the building at SMC where her office was located.  Plaintiff also asserted that the black mold was causing her various health problems, including aggravating her asthma.

79.     Defendant SMC terminated Plaintiff's employment in retaliation for her repeated complaints about Defendant SMC's athletics department, administration, and campus safety protecting male student-athletes at SMC from unlawful misconduct and for her complaints about the mold in her office building.

80.     Plaintiff's termination from Defendant SMC was against the clear mandates of public policy under South Carolina law, which contains express prohibitions against obstruction of justice, protections for victims' rights, and provisions for workplace safety.

81.     Defendant SMC terminated Plaintiff's employment in retaliation for Plaintiff's complaints, which were protected by clear mandates of public policy under South Carolina law.

82.     Plaintiff's wrongful discharge has directly and proximately caused her to suffer damages, including loss of compensation and benefits, lost professional standing and diminished earning capacity, emotional distress, pain and suffering, embarrassment, humiliation, anxiety, and loss of enjoyment of life.

83.     Plaintiff is entitled to recover in this action actual damages from Defendant SMC sufficient to compensate her for her economic and non-economic injuries.

84.     In addition, Plaintiff is entitled to an award of punitive damages against Defendant SMC, in an amount to be determined by the jury, sufficient to deter this Defendant and others from engaging in such wrongful conduct in the future.

17

## FOR A SIXTH CAUSE OF ACTION
### (ADA–Discrimination Based on Disability)
### (Against Defendant SMC)

85.    Plaintiff repeats and realleges Paragraphs 1-84 as if restated herein verbatim.

86.    Plaintiff has a "disability" within the meaning of the ADA, 42 U.S.C. § 12102(2), because she has one or more physical or mental impairments that substantially limit one or more of her major life activities; because she has a record of such impairment(s); and/or because Defendant SMC regarded her as having such an impairment or impairments.

87.    Plaintiff is a "qualified individual with a disability" within the meaning of Section 101(8) of the ADA, 42 U.S.C. § 12111(8), because she could, with or without reasonable accommodation, perform all of the essential functions of her position with Defendant SMC.

88.    Defendant SMC is a covered "employer" within the meaning of the ADA.  Upon information and belief, Defendant SMC employs or has employed 15 or more employees at all times relevant to this Complaint.  Upon information and belief, Defendant SMC employs or has employed in excess of 250 employees during the relevant period.  Defendant SMC is a "person" within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7).  Defendant SMC is engaged in an "industry affecting commerce" within the meaning of Section 101(7) of the ADA, 42 U.S.C. § 12111(7).

89.    Defendant SMC discriminated against Plaintiff because of her disability by failing and refusing to accommodate her disability despite request by Plaintiff, by Defendant Gibbs telling Plaintiff that they could move her office to a windowless closet in another building on campus, by non-renewing her employment contract, and by terminating her employment on or about February 16, 2018.

18

90.     Defendant SMC had knowledge of Plaintiff's disability and intentionally and willfully discriminated against her based on that disability in direct violation of the ADA.

91.     As a direct and proximate result of Defendant SMC's deliberate, intentional, reckless, and malicious discrimination against Plaintiff, she has suffered, and continues to suffer, injuries including lost wages, lost earning capacity, mental and emotional anguish, humiliation, loss of enjoyment of life, and other economic and non-economic damages.

92.     Plaintiff is entitled to an award of compensatory damages; back pay, front pay, and interest thereon; lost employment benefits; loss of professional standing and diminished earnings capacity; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

93.     Defendant SMC's discriminatory conduct toward Plaintiff was done with malice and with reckless disregard for her federally protected civil rights.  Further, Defendant SMC knew or reasonably should have known that its conduct was unlawful.  Plaintiff is, therefore, entitled to recover punitive damages from Defendant SMC in an amount sufficient to deter this Defendant and others from engaging in such behavior in the future.

### FOR A SEVENTH CAUSE OF ACTION
**(ADA–Unlawful Retaliation)**
**(Against Defendant SMC)**

94.     Plaintiff repeats and realleges Paragraphs 1-93 as if restated herein verbatim.

95.     Plaintiff engaged in protected activity under the ADA by requesting that Defendant SMC take reasonable steps to accommodate her disability, and, through her attorney, by threatening to pursue a charge of disability discrimination against Defendant SMC with the EEOC.

96.     Defendant SMC retaliated against Plaintiff because she engaged in the protected

activity described above, by Defendant Gibbs telling Plaintiff that they could move her office to a windowless closet in another building on campus, by refusing to renew Plaintiff's employment contract, by terminating her employment with Defendant SMC, and by rescinding Defendant Cochran's previous assurance that Plaintiff's salary and benefits would be continued through the end of her contract period.

97.     As a direct and proximate result of Defendant SMC's deliberate, intentional, reckless, and malicious retaliation against Plaintiff, she has suffered, and continues to suffer, injuries including lost wages, lost earning capacity, mental and emotional anguish, humiliation, loss of enjoyment of life, and other economic and non-economic damages.

98.     Plaintiff is entitled to an award of compensatory damages; back pay, front pay, and interest thereon; lost employment benefits; loss of professional standing and diminished earnings capacity; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

99.     Defendant SMC's retaliatory conduct toward Plaintiff was done with malice and with reckless disregard for her federally protected civil rights.   Further, Defendant SMC knew or reasonably should have known that its conduct was unlawful.   Plaintiff is, therefore, entitled to recover punitive damages from Defendant SMC in an amount sufficient to deter this Defendant and others from engaging in such unlawful, retaliatory behavior in the future.

### FOR AN EIGHTH CAUSE OF ACTION
**(ADA–Unlawful Health Inquiry)**
**(Against Defendant SMC)**

100.     Plaintiff repeats and realleges Paragraphs 1-99 as if restated herein verbatim.

101.     On or about January 30, 2018, Defendant Gibbs burst into Plaintiff's office with an

20

angry face, sat down across from her, and stated in an intimidating manner, "So, tell me about your health issues." Plaintiff reluctantly told Defendant Gibbs about her lupus, asthma, and PTSD because she feared for her job with Defendant SMC if she refused the request. In addition, Plaintiff told Mr. Gibbs about her GI problems and that she had been reporting to work in adult diapers.

102.    On or about February 9, 2018, during a faculty meeting, Plaintiff saw Defendant Gibbs, who asked her how she was feeling. She responded that she had an appointment scheduled with a specialist, but that they think she might have Crohn's Disease and that she was still wearing adult diapers to work. Defendant Gibbs responded, "Wow. That sounds like a life-long issue."

103.    At the relevant time, Defendant Gibbs was the Dean of Instruction for Defendant SMC and was Plaintiff's second-line supervisor. Defendant Gibbs's statements in question were made during the course and scope of his employment with Defendant SMC; thus, Defendant SMC is liable for Defendant Gibbs's actions under principles of respondeat superior.

104.    Defendant Gibbs's discussions with Plaintiff, as described herein, violate the limits on medical inquiries that employers are allowed to make of employees under the ADA. Defendant Gibbs's unlawful medical inquiries of Plaintiff were not job-related and consistent with business necessity of Defendant SMC. Accordingly, Defendant Gibbs's health inquiries of Plaintiff were unlawful under the ADA.

105.    As a direct and proximate result of Defendant SMC's violations of the ADA's limits on medical inquiries, Plaintiff has suffered and continues to suffer significant economic and non-economic injuries, including lost wages and employment benefits, lost earning capacity, and mental and emotional distress, anguish, humiliation, and loss of enjoyment of life.

106.    Plaintiff is entitled to an award of compensatory damages; back pay and lost

employment benefits; reinstatement or front pay; pre-judgment interest; loss of professional standing and diminished earnings capacity; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

107.    Defendant SMC's violations of the ADA as described herein were done with malice and with reckless disregard for Plaintiff's federally protected rights.  Further, Defendant SMC knew or reasonably should have known that its conduct was unlawful.  Plaintiff is, therefore, entitled to recover punitive damages from Defendant SMC in an amount sufficient to deter this Defendant and others from engaging in such wrongful and unlawful conduct in the future.

**FOR A NINTH CAUSE OF ACTION**
**(Title IX–Gender Discrimination)**
**(Against Defendant SMC)**

108.    Plaintiff repeats and realleges Paragraphs 1-107 as if restated herein verbatim.

109.    Defendant SMC operates an educational program or activity that receives Federal financial assistance and is, therefore, covered by Title IX of the Education Amendments Act of 1972 ("Title IX"), as amended, 20 U.S.C. § 1681(a).

110.     Plaintiff is a female and is, therefore, within the protected class under Title IX.

111.    Plaintiff performed her position with Defendant SMC in accordance with a reasonable employer's legitimate expectations.

112.    Defendant Gibbs created a hostile work environment, based on sex, by making inappropriate comments about Plaintiff or in Plaintiff's presence that indicate unlawful animus based on gender, including, but not limited to, the following: telling Plaintiff that she wore sweaters or shirts that were "too tight" and that she should dress more conservatively because most of the students in the Criminal Justice Program are males; commenting to Plaintiff about how attractive

22

Dale Hyder's wife is; stating that Plaintiff's work-study student "dressed like a common street whore"; stating that certain faculty member(s) or students had "resting bitch face"; and referring to Plaintiff as a "crazy cat lady."

113.    Defendant Gibbs's offensive, gender-related comments were so frequent and pervasive that they affected Plaintiff in the performance of her job.

114.    In addition, Plaintiff repeatedly complained to Defendant Gibbs and her supervisor about a male adjunct professor, Dale Hyder, undermining her to students based on her gender.  Mr. Hyder's comments about Plaintiff were so inappropriate that students in Mr. Hyder's classes actually complained to Defendant Gibbs about the offensive comments and informed Plaintiff about them.

115.    Defendant Gibbs failed or refused to address the complaints about Mr. Hyder's misconduct.

116.    On or about February 13, 2018, Plaintiff was informed by Defendant Gibbs that her employment contract would not be renewed for the 2018-2019 academic year.

117.    On or about February 16, 2018, Plaintiff was terminated and told to leave the campus immediately.

118.    Upon information and belief, Plaintiff was replaced by a male employee.

119.    Plaintiff was subjected to discrimination in her employment in violation of Title IX based on her gender.

120.    Any reason proffered by Defendant SMC for Plaintiff's adverse employment actions is a pretext for unlawful gender discrimination.

121.    As a direct and proximate result of Defendant SMC's violations of Title IX, Plaintiff has suffered and continues to suffer significant economic and non-economic injuries, including lost

wages and employment benefits, lost professional standing and diminished earning capacity, and mental and emotional distress, anguish, humiliation, and loss of enjoyment of life.

122.    Plaintiff is entitled to an award of compensatory damages; back pay and lost employment benefits; reinstatement or front pay; pre-judgment interest; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

123.    Defendant SMC's violations of Title IX as described herein were done with malice and with reckless disregard for Plaintiff's federally protected rights.  Further, Defendant SMC knew or reasonably should have known that its conduct was unlawful.  Plaintiff is, therefore, entitled to recover punitive damages from Defendant SMC in an amount sufficient to deter this Defendant and others from engaging in such wrongful and unlawful conduct in the future.

## FOR A TENTH CAUSE OF ACTION
### (Title IX–Unlawful Retaliation)
### (Against Defendant SMC)

124.    Plaintiff repeats and realleges Paragraphs 1-123 as if restated herein verbatim.

125.    During her employment with Defendant SMC, Plaintiff engaged in protected activity under Title IX in the following particulars:

> A.    By assisting female students in making complaints about unlawful treatment by male students, particularly male student athletes on Defendant SMC's baseball and men's basketball teams who had committed intentional torts or crimes against them;

> B.    By complaining to Defendant Gibbs about improper comments towards Plaintiff by a male colleague who was specifically undermining her with

24

students; and

C.     By specifically making, through her counsel, a formal complaint to Defendant SMC's president, Title IX co-ordinator, and outside employment counsel about alleged Title IX violations and requesting that Defendant SMC conduct an investigation into her allegations under Title IX.

126.    Defendant SMC unlawfully retaliated against Plaintiff, because of her protected activity under Title IX, by not renewing her Employment Contract, by terminating her employment and requesting that she leave campus immediately, and by rescinding Defendant Cochran's commitment to continue Plaintiff's pay and benefits throughout the remainder of her contract. Defendant SMC's unlawful retaliation against Plaintiff was a motivating factor in the adverse employment actions taken against her.

127.    Any reason proffered by Defendant SMC for Plaintiff's adverse employment actions is a pretext for unlawful retaliation.

128.    As a direct and proximate result of Defendant SMC's retaliation in violation of Title IX, Plaintiff has suffered and continues to suffer significant economic and non-economic injuries, including lost wages and employment benefits, lost professional standing and diminished earning capacity, and mental and emotional distress, anguish, humiliation, and loss of enjoyment of life.

129.    Plaintiff is entitled to an award of compensatory damages; back pay and lost employment benefits; reinstatement or front pay; pre-judgment interest; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

130.    Defendant SMC's retaliation against Plaintiff in violation of Title IX as described herein was done with malice and with reckless disregard for Plaintiff's federally protected rights.

Further, Defendant SMC knew or reasonably should have known that its conduct was unlawful. Plaintiff is, therefore, entitled to recover punitive damages from Defendant SMC in an amount sufficient to deter this Defendant and others from engaging in such wrongful and unlawful conduct in the future.

### FOR AN ELEVENTH CAUSE OF ACTION
**(Title VII–Hostile Work Environment, Disparate Treatment, Gender Discrimination)**
**(Against Defendant SMC)**

131.    Plaintiff repeats and realleges Paragraphs 1-130 as if restated herein verbatim.

132.    Defendant SMC is a covered "employer" within the meaning of Title VII. Upon information and belief, Defendant SMC employs or has employed 15 or more employees at all times relevant to this Complaint. Upon information and belief, Defendant SMC employs or has employed in excess of 250 employees during the relevant period.

133.    Plaintiff is a female and is, therefore, within the protected class under Title VII.

134.    Plaintiff performed her position with Defendant SMC in accordance with a reasonable employer's legitimate expectations.

135.    Defendant Gibbs created a hostile work environment, based on sex, by making inappropriate comments about Plaintiff or in Plaintiff's presence that indicate unlawful animus based on gender, including, but not limited to, the following: telling Plaintiff that she wore sweaters or shirts that were "too tight" and that she should dress more conservatively because most of the students in the Criminal Justice Program are males; commenting to Plaintiff about how attractive Dale Hyder's wife is; stating that Plaintiff's work-study student "dressed like a common street whore"; stating that certain faculty member(s) or students had "resting bitch face"; and referring to Plaintiff as a "crazy cat lady."

136.     Defendant Gibbs's offensive, gender-related comments were so frequent and pervasive that they affected Plaintiff in the performance of her job.

137.     In addition, Plaintiff repeatedly complained to Defendant Gibbs about a male adjunct professor, Mr. Hyder, undermining her to students based on her gender.  Mr. Hyder's comments about Plaintiff were so inappropriate that students in Mr. Hyder's classes complained to Defendant Gibbs about the comments.

138.     Defendant Gibbs failed or refused to address the complaints about Mr. Hyder's misconduct.

139.     On or about February 13, 2018, Plaintiff was informed by Defendant Gibbs that her employment contract would not be renewed for the 2018-2019 academic year.

140.     On or about February 16, 2018, Plaintiff was terminated and told to leave the campus immediately.

141.     Upon information and belief, Plaintiff was replaced by a male employee.

142.     Plaintiff was subjected to discrimination in her employment in violation of Title VII based on her gender.

143.     Any reason proffered by Defendant SMC for Plaintiff's adverse employment actions is a pretext for unlawful gender discrimination.

144.     As a direct and proximate result of Defendant SMC's violations of Title VII, Plaintiff has suffered and continues to suffer significant economic and non-economic injuries, including lost wages and employment benefits, lost earning capacity, and mental and emotional distress, anguish, humiliation, and loss of enjoyment of life.

145.     Plaintiff is entitled to an award of compensatory damages; back pay and lost

employment benefits; reinstatement or front pay; pre-judgment interest; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

146.    Defendant SMC's violations of Title VII as described herein were done with malice and with reckless disregard for Plaintiff's federally protected rights.  Further, Defendant SMC knew or reasonably should have known that its conduct was unlawful.  Plaintiff is informed and believes that she is therefore entitled to recover punitive damages from Defendant SMC in an amount sufficient to deter this Defendant and others from engaging in such wrongful and unlawful conduct in the future.

### FOR A TWELFTH CAUSE OF ACTION
#### (Title VII–Unlawful Retaliation)
#### (Against Defendant SMC)

147.    Plaintiff repeats and realleges Paragraphs 1-146 as if restated herein verbatim.

148.     During her employment with Defendant SMC, Plaintiff engaged in protected activity under Title VII in the following particulars:

> A.    By complaining to Defendant Gibbs about improper comments towards Plaintiff by a male colleague who was specifically undermining her with students; and

> B.    By specifically making, through her counsel, an internal complaint to Defendant SMC's president, Title IX co-ordinator, and outside employment counsel about gender discrimination against her in violation of Title VII.

149.    Defendant SMC unlawfully retaliated against Plaintiff, because of her protected activity under Title VII, by not renewing her Employment Contract, by terminating her employment and requesting that she leave campus immediately, and by rescinding Defendant Cochran's

commitment to continue Plaintiff's pay and benefits throughout the remainder of her contract.

150.    As a direct and proximate result of Defendant SMC's retaliation in violation of Title VII, Plaintiff has suffered and continues to suffer significant economic and non-economic injuries, including lost wages and employment benefits, lost professional standing and diminished earning capacity, and mental and emotional distress, anguish, humiliation, and loss of enjoyment of life.

151.    Any reason proffered by Defendant SMC for Plaintiff's adverse employment actions is a pretext for unlawful retaliation.

152.    Plaintiff is entitled to an award of compensatory damages; back pay and lost employment benefits; reinstatement or front pay; pre-judgment interest; attorney's fees, expert fees, and costs; and other actual damages in an amount to be proven at trial.

153.    Defendant SMC's retaliation against Plaintiff in violation of Title VII as described herein was done with malice and with reckless disregard for Plaintiff's federally protected rights. Further, Defendant SMC knew or reasonably should have known that its conduct was unlawful. Plaintiff is, therefore, entitled to recover punitive damages from Defendant SMC in an amount sufficient to deter this Defendant and others from engaging in such wrongful and unlawful conduct in the future.

## FOR A THIRTEENTH CAUSE OF ACTION
### (Invasion of Privacy)
### (Against Defendants SMC, Gibbs, and Ferguson)

154.    Plaintiff repeats and realleges Paragraphs 1-153 as if restated herein verbatim.

155.    Defendants SMC, Gibbs, and Ferguson intentionally intruded into Plaintiff's solitude, seclusion, and private affairs, which Plaintiff reasonably expected would be free from intrusion without her consent, in the following particulars:

A.  By repeatedly asking Plaintiff about her health conditions;

B.  By falsely disclosing to Plaintiff's co-worker(s) that she had Clostridium difficile (commonly known as "C-Diff") and may have exposed others to C-Diff, causing Plaintiff's work area and building to be decontaminated during her absence;

C.  By falsely accusing Plaintiff of having inappropriate sexual relationships with a student and a staff member;

D.  By requiring Plaintiff to provide detailed information about her previous stalking incident with an individual in Florida;

E.  By using Plaintiff's personal photograph, without her permission, in connection with a school announcement of her hiring in several local publications and refusing or failing to retract such publication after specific request by Plaintiff because of concerns about her privacy and security; and

F.  By disseminating Plaintiff's personal photograph from LinkedIn immediately following her termination, with a statement that implied Plaintiff was a dangerous criminal and posed a threat to students, faculty, and staff at the school.

156.  In addition, Defendant SMC portrayed Plaintiff in a false light by the above-described conduct.

157.  Defendants Gibbs's, Ferguson's, and SMC's invasions of Plaintiff's privacy were substantial and unreasonable and were of a nature that would cause mental injury to a person of ordinary feelings and intelligence.

30

158.    Defendants Gibbs's, Ferguson's, and SMC's invasions of Plaintiff's privacy have directly and proximately caused Plaintiff to suffer damages, including emotional distress, pain and suffering, embarrassment, humiliation, anxiety, and loss of enjoyment of life.

159.    Plaintiff is entitled to recover in this action actual damages from Defendants Gibbs, Ferguson, and SMC sufficient to compensate her for her economic and non-economic injuries.  In addition, Plaintiff is entitled to an award of punitive damages against Defendants Gibbs, Ferguson, and SMC, in an amount to be determined by the jury, sufficient to deter these Defendants and others from engaging in such wrongful conduct in the future.

### FOR A FOURTEENTH CAUSE OF ACTION
**(Violation of Civil Rights–42 U.S.C. § 1983)**
**(Against Defendant Boyd in His Individual Capacity)**

160.    Plaintiff repeats and realleges Paragraphs 1-159 as if restated herein verbatim.

161.    Plaintiff has a constitutionally protected liberty interest in her good name, honor, integrity, and reputation in the academic realm and in her chosen professional career as a professor of criminal justice.

162.    Defendant Boyd was previously the Chief of Defendant SMC's Campus Police Department and was a sworn, Class I Police Officer, certified by the South Carolina State Law Enforcement Division, with the power under state law to arrest individuals.

163.    On February 22, 2018, Defendant Boyd sent to Plaintiff a Trespass Notice, informing Plaintiff that she was not allowed on Defendant SMC's campus and that she could have no contact or communication with anyone at the college "under any circumstances," including through telephone, email, or social media.

164.    In addition, on February 16, 2018, the date of Plaintiff's termination from Defendant

SMC, Defendant Boyd published a post on his public Facebook page stating, "I do not want to see that little domestic terrorist's face on my timeline, Thanks."   Plaintiff is informed and believes that this post was in reference to Plaintiff and her termination of employment at Defendant SMC, which occurred on the same date.

165.    Defendant Boyd, acting under color of state law, has deprived Plaintiff of her First Amendment rights to free speech and to freedom of association as guaranteed by the United States Constitution.

166.    In addition, Plaintiff's abrupt termination followed by Defendant Boyd's Facebook post created a stigma that seriously damaged Plaintiff's reputation in the academic community and in the general public, which has had a detrimental impact on Plaintiff's ability to obtain future employment opportunities in her chosen profession and area of extensive study and expertise.

167.    Defendant Boyd, acting under color of state law, deprived Plaintiff of her rights to due process and her First Amendment rights to free speech and free association, which rights are guaranteed by the Constitution and laws of the United States and of South Carolina, in violation of 42 U.S.C. § 1983.  Defendant Boyd failed or refused to conduct any type of investigation into spurious allegations against Plaintiff before or after depriving Plaintiff of her constitutional rights and civil liberties.

168.    As a direct and proximate result of Defendant Boyd's violations of Plaintiff's constitutionally protected rights, she has suffered, and continues to suffer, injuries including lost wages, lost earning capacity, mental and emotional anguish, humiliation, loss of enjoyment of life, attorney's fees and court costs, and other economic and non-economic damages.

169.    Upon information and belief, Defendant Boyd's actions against Plaintiff were

intentional, malicious, and in reckless disregard for her rights to be free from such unlawful action. Therefore, Plaintiff is entitled to recover punitive damages against Defendant Boyd, in an amount to be determined by the jury, sufficient to deter this Defendant and others from engaging in such unlawful actions in the future.

### FOR A FIFTEENTH CAUSE OF ACTION
**(ERISA–Statutory Penalties)**
**(Against Defendant SMC)**

170.    Plaintiff repeats and realleges Paragraphs 1-169 as if restated herein verbatim.

171.    Defendant SMC maintains various employee welfare and benefits plans, including health insurance and short-term and long-term disability insurance for its qualified, participating employees.

172.    During Plaintiff's employment with Defendant SMC, Plaintiff was a participant in Defendant SMC's employee benefit plans.

173.    On March 6, 2018, Plaintiff, through her undersigned counsel, made a written request to Defendant SMC for "a copy of all plan documents for any employee welfare or benefit plan in which she was a participant during her employment with SMC." The letter was directed to Defendant Cochran, as President of Defendant SMC, with a carbon copy attached via email to Defendant's Human Resources Director, Jenny Dunn.

174.    Pursuant to Section 502(a) of ERISA, 29 U.S.C. § 1132(a), Defendant SMC was required to produce a copy of the requested documents within 30 days after Plaintiff's written request for such documents.

175.    To date, Defendant SMC has failed or refused to provide a copy of the documents requested by Plaintiff.

176.     Pursuant to Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1), and 29 C.F.R. § 2575.502c-1, Plaintiff is entitled to a statutory penalty of up to $110.00 per day of violation, plus attorney's fees and costs incurred in bringing this action.

**WHEREFORE**, having fully set forth her causes of action against Defendants, Plaintiff respectfully requests the following relief:

A.     Compensatory damages for economic and non-economic injuries, including loss of professional standing and diminished earning capacity;

B.     Equitable relief, including back pay, and all benefits and interest thereon;

C.     Reinstatement or front pay, with all benefits;

D.     Punitive damages in an amount sufficient to deter this Defendant and others from engaging in similar unlawful conduct;

E.     Statutory penalities of up to $110.00 per day of violation;

F.     Pre-judgment interest;

G.     Enhancement to Plaintiff's actual, economic damages to account for any negative income tax consequences Plaintiff might sustain from receiving a damages award in a lump sum;

H.     Attorney's fees, expert fees, and costs in bringing this action; and

I.     Such other relief as this Court may deem just and proper.

\*     \*     \*

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY FOR ALL CAUSES OF ACTION THAT MAY, UNDER APPLICABLE LAW, BE PROPERLY DECIDED BY A JURY.**

Respectfully submitted,


 s/ David E. Rothstein

David E. Rothstein, Fed. ID No. 6695
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, South Carolina 29605
Telephone: (864) 232-5870
Fax: (864) 241-1386
E-mail: drothstein@rothsteinlawfirm.com

Attorney for Plaintiff, Summer D. Lashley, Ph.D.

November 1, 2018

Greenville, South Carolina.